WOODHULL (BEACH v.). See Case No. 1,154.

---

## Case No. 17,974.

### WOODHULL v. BEAVER COUNTY.

[3 Wall. Jr. 274;[1] 20 Leg. Int. 76.]

Circuit Court, D. Pennsylvania. Nov. Term, 1859.

DIFFERENCE BETWEEN PREVENTIVE AND REMEDIAL JUSTICE—COUNTY BONDS—DOUBTFUL VALIDITY.

1. A court will frequently issue process to prevent acts being done on the ground that they are unauthorized, which same acts, after they are done, the court will enforce as having been made in pursuance of authority sufficiently given.

2. Ex. gr. It will hold a county bound to pay bonds actually issued and negotiated by it under an authority assumed from an ambiguously and ill expressed statute—although had any citizen of the county applied for an injunction to restrain the issue on the ground of want of

[1] [Reported by John William Wallace, Jr., Esq.]

authority clearly given by the statute, the court would have granted such preventive remedy.

[Cited in Lewis v. Shreveport, Case No. 8,331; Memphis v. Brown, Id. 9,415.]

Motion for a new trial; the case being thus: A statute of Pennsylvania (Act April 7, 1853, p. 335) authorized the county of Beaver to subscribe to the stock of a railroad; "provided," such is the language of the act, "that the amount of subscription shall not exceed $100,000; the amount thereof shall be fixed and determined by one grand jury of the county, and upon report of such grand jury being fixed, it shall be lawful for the county commissioners to carry the same into effect by making, in the name of the county, the subscription so directed by said grand jury. Nothing was here said about the issuing of any bonds by the county; but a second proviso enacted that "whenever bonds of the county are given in payment of subscription, the same shall not be sold by said railroad company at less than par value." The grand jury, without either "fixing" or "determining" any amount, "recommended the commissioners to make the subscription in conformity to the act of assembly." The commissioners accordingly issued negotiable bonds, binding the county (to what extent did not here appear); and having given them to the railroad company, this last put them in the market and sold them bona fide for what they would bring; in most cases much below par. The present plaintiff having bought certain of the bonds, and the county not paying interest, he sued it and got a verdict here for the amount.

On a motion for a new trial, two questions were now presented: I. Had the commissioners authority to issue bonds by virtue of the above-mentioned act of assembly, authorizing it to subscribe to stock? II. was the recommendation of the grand jury, which fixed no amount, sufficient to authorize the commissioners to make the subscriptions which they have made, and to execute the bonds issued thereon? this court having in a former case declared that when authority to do acts so far out of the ordinary range of county action was given, it ought to be given "in clear and unambiguous terms."

GRIER, Circuit Justice. This court has said that statutes conferring such doubtful and important powers on county or city officers as have here been exercised, should express the intention of the legislature "in clear and unambiguous terms." We do not intend to retract the assertion, and if the only question before the jury had been whether these powers were vested in these commissioners in terms such as we have declared they ought, in all cases, to be given in, we might well have instructed them, that such was not the case. But it does not follow as a consequence of what we have

declared to be the proper sort of language in which to vest such powers, that courts and juries must treat the legislation as a nullity, which is not conformable to our rule. I am sorry to say that too many of the acts of the Pennsylvania legislature granting powers most dangerous to individuals and the rights of property, cannot bear this test. As an excuse for this criminal negligence in those entrusted by the people with the exercise of this sovereign function, it is said. that all these acts of assembly are drawn up by the persons known as outside or lobby members, who are employed for "a consideration" to solicit legislation by which speculators may advance their interests at the expense of the community. Be the reason what it may, we can only say that the persons who have drawn many of the statutes about railroad subscriptions lately brought to our notice, have exhibited an astonishing obliquity of genius in their selection of the terms used to express the intention of the legislature. I will not say that it was the deliberate intention of these scribes to make the legislature speak in such ambiguous terms, that they might be used to give credit and currency to certain securities by one interpretation, and by another to disown the bond and defraud the community. In the case of the bonds issued by the city of Pittsburg to the Allegheny Valley Railroad, such has been the result. But in this case, the meaning of the legislature has not been so absolutely obscured by ingenious generalities of expression. Though not expressed in "clear and unambiguous language," this act is sufficiently capable of the construction that "the commissioners or a majority of them, are authorized to pledge the faith of the county by bonds drawn in the best approved forms to give them value in the money market, to such an amount, not exceeding $100,000, as the grand jury of the county may approve or direct;" and to provide for the payment of principal and interest of the same by taxation. And this interpretation we think it reasonable to give to it in the circumstances of this case.

II. As respects the report of the grand jury. It cannot be denied that this report has been drawn by some blundering scribe who perhaps did not take the trouble to look at the statute under which he was acting. But if it requires charitable criticism to support the intention of the legislature, how much more should it be extended to the acts of a grand jury! While the report fixes no amount, it yet recommends a subscription in conformity to the act of assembly. If the commissioners have not yet subscribed to the full amount of $100,000, they can so far as the report gives them authority. If, indeed, this were an application to enjoin or suppress the issue of these bonds, I would say—(i.) As respects the language of the act of assembly, that we would be satisfied with nothing short of direct terms (which it would have been as easy to

use as those that are used), and that we would not infer these great and dangerous powers from circumlocution and vague terms; and (ii.) as respects the grand jury's report, that it was insufficient, because it does not in "clear terms" fix and determine the amount. If any citizen of Beaver county had chosen to dispute the construction assumed by the commissioners both of the statute and of the report, the courts were open. He could have asked for an injunction and we would have granted it. But now, when all parties have given their construction to the act, and it can by its terms be made to include the power, the court will not exercise astutia to give it a stringent interpretation in order to enable a county to disown its obligations after having received their value. New trial refused.